IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION

PROGRESSIVE AMERICAN
INSURANCE COMPANY,

       Plaintiff,

v.                                            Case No: 8:13-cv-2171-T-33-VMC-AEP

PAUL STEELE, GRAHAM STEELE AND
DOROTHY MAE MURPHY-SMITH,

       Defendants.
_____/

**PLAINTIFF'S REPLY TO DEFENDANT DOROTHY MAE MURPHY-SMITH'S RESPONSE TO PLAINTIFF'S MOTION FOR ENTRY OF FINAL SUMMARY JUDGMENT**

Plaintiff, PROGRESSIVE AMERICAN INSURANCE COMPANY ("PROGRESSIVE"), files this Reply to Defendant, DOROTHY MAE MURPHY-SMITH'S ("MURPHY-SMITH"), Response to Plaintiff's Motion for Entry of Final Summary Judgment (Doc. 26) and Incorporated Memorandum of Law.

In her Response, MURPHY-SMITH makes three arguments, which can be best summarized as follows:

1. The Personal Umbrella Policy, in order to exclude a driver from coverage, requires that the insured specifically ask PROGRESSIVE to exclude [any person from coverage] and that Dr. Paul Steele did not ask PROGRESSIVE to do so, therefore, his son, Graham Steele, is not an excluded driver,

2. Despite the unrefuted testimony that Dr. Steele understood that the only way to continue umbrella coverage was to exclude his son, Graham, from the policy, and that

wanting the umbrella coverage to continue, Dr. Steele authorized PROGRESSIVE to write the policy for the next policy term, excluding Graham Steele as a driver, the absence of a signed "Named Driver Exclusion Election" precludes PROGRESSIVE from excluding Graham Steele as a driver, and

3. Not only must Dr. Paul Steele specifically ask PROGRESSIVE to exclude his son as a driver under the umbrella policy, but Dr. Steele's wife, Leah, must join in that request.

MURPHY-SMITH, in her Response, does not address the following arguments raised by PROGRESSIVE in its motion, and therefore, it is submitted that MURPHY-SMITH does not contest those arguments.

1. That bodily injury liability coverage under an umbrella policy is not statutorily mandated and, therefore, no written request to exclude a driver under such a policy is required by Florida law,

2. Dr. Steele cannot avail himself of the fact that he chose not to read the policy and, as a result, did not know that by virtue of his son being an excluded driver, that he, Dr. Steele, would have no coverage for his vicarious liability,

3. Dr. Steele's assumption that he, himself, would have coverage, even though his son was excluded as a driver, absent any facts upon which that assumption is based, is not a "fact" that can be relied on to establish coverage or defeat summary judgment, and

4. Construing the policy to require Dr. Steele to "ask" PROGRESSIVE to exclude his son from coverage under the Personal Umbrella Policy, when Dr. Steele authorized PPROGRESSIVE to do so as a precondition to continuing coverage under the

personal Umbrella Policy, would be to construe the policy in a way that would defy logic and common sense, and would reach an absurd result, contrary to Florida law.

As to MURPHY-SMITH's first argument, PROGRESSIVE states that that argument was fully addressed in its motion and will not readdress it here, other than to briefly state that despite the contention of Dr. Steele that he didn't ask PROGRESSIVE to exclude his son as a driver under the Personal Umbrella Policy, he did ask PROGRESSIVE to continue to provide umbrella coverage knowing that his son was to be excluded as a driver. That is, for all practical purposes, the same as Dr. Steele asking PROGRESSIVE to exclude his son from coverage under the Personal Umbrella Policy.

As to MURPHY-SMITH's second argument, MURPHY-SMITH points to no requirement in Florida law that a written document be executed requiring the exclusion of a driver. MURPHY-SMITH simply points to what she deems to be a material fact, i.e., whether such a form was actually signed. In doing so, MURPHY-SMITH misstates the evidence. Exhibit 6, the document referred to by MURPHY-SMITH in the third paragraph of Page 5 of her RESPONSE, at Page ID 243, is a letter dated May 8, 2012 to Dr. Paul Steele, from Rebecca L. Crawford, at Comegys Insurance Corner. Attached to that document is a form entitled Application for Personal Umbrella Insurance, a six-page document with a signature line on Page 6 of 6, as well as accompanying documents entitled Named Driver Exclusion Election, Electronic Funds Transfer, and a payment receipt. As testified to by Ryan Clegg, when asked about Exhibit 6, he stated as follows:

Q. Okay. Do you know whether or not Comegys would have copies of any signed documents?

A. I can check.

Q. Okay.

A. <u>But, again, when you originate a policy, these become direct bill policies. So if payment's received, they're effectively renewed.</u>

Q. Okay. Going to the third page, it's called Application for Personal Umbrella Insurance.

A. Uh-huh.

Q. At the top it says, May 8th, 2012, and it says page one of six, with the following documents being page two of six, three of six, four of six, five of six, six of six. And there on page six of six, there's a place where it says, Signature of named insured.

A. Okay.

Q. Do you have any knowledge as to whether or not Dr. Steele signed page six of six?

A. I don't know that.

Q. Okay.

A. <u>But, again, a lot of these policies are direct billed</u>.

Q. Okay.

A. And once they're signed the first year, if they're paid for they're effectively renewed. So it's my understanding that maybe this stuff -- this policy renewal was not signed by Dr. Steele.

Q. Do you know whether Dr. Steele actually returned this either signed or unsigned to --

A. I'll certainly check.

(Clegg Dep. 38:1 – 39:7, Dec. 4, 2013.)

Q. Okay. Following pages one through six is a page that says one of one, which is an election or rejection of excess uninsured motorist bodily injury coverage. And then following that, which is also page one of one, is a named driver exclusion election, which says at the top of it: You have named the following person as excluded drivers under this policy.

A. Which page are we on?

4

Q. (Indicating.)

A. Oh. Okay. Right.

Q. It's called named driver exclusion election.

A. Uh-huh.

Q. And it identifies Graham Steele with his date of birth, and it's also unsigned?

A. Right.

Q. And, again, do you know whether or not Dr. Steele signed --

A. I had him sign an exclusion form. And that's the same date that I went to his house. He signed that exclusion form, I faxed that to Progressive, either from my dad's office or from my office, but I cannot find this form.

Q. Well, that --

A. It is an agreement, though, that Dr. Steele understood Graham was excluded from the policy. Unless otherwise -- that I'm not aware of.

Q. Right. So there's no doubt in your mind that Dr. Steele signed a named driver exclusion election form that was the same as the one that's an exhibit here that you're identifying?

A. There's no doubt in my mind.

(Clegg Dep. 40:18 – 41:25, Dec. 4, 2013.)

Q. All right. Now, you had mentioned that this is a direct bill policy. What's that mean?

A. That means that when the policy comes up for renewal, for instance, instead of me having to physically go to the insured and renew the policy, the policy will effectively renew with the billing information that's on file with the carrier. So, I guess, to give you an idea of a non direct bill, if you owned a commercial property or a -- let's say a -- yeah, if you owned a piece of commercial property, I would get the bill from the insurance company, I would then invoice you to my agency; whereas, Progressive bills direct to the insured, without notifying me or -- without having me collect any premium, and then pays us a commission. So a direct bill means that I don't have to do any of the billing for these types of policies. Progressive handles all the billing and

5

>invoicing, if that makes sense. The bills are sent directly to Progressive, as opposed to me, and then handed off to the client. (Emphasis added)

(Clegg Dep. 70:18 – 71:14, Dec. 4, 2013.)

The discussion with Ryan Clegg alluded to by MURPHY-SMITH in its Response does not relate specifically to the Named Driver Exclusion Election, but to the Application for Personal Umbrella Insurance, which, according to Ryan Clegg, is unnecessary for Dr. Steele to sign in order to renew the policy, in that in "direct bill policies," once the payment is received, the policy is "effectively renewed." As is indicated by the Payment Receipt, the last page of Exhibit 6, at Doc. 28-1, Page ID 228, the payment had been received so the policy was renewed without the necessity of the application, itself being signed.

The Named Driver Exclusion Election, which was part of the Application, however, had been signed by Dr. Steele in the presence of Ryan Clegg. Not only did Ryan Clegg testify to that in his deposition, he, in his Errata Sheet, amended his answer that he had faxed that document to PROGRESSIVE, by stating:

>"After conclusion of the depositions, it has come to my attention that I may not have faxed the driver exclusion form back to Progressive. With that said, I did obtain a copy of it which I have misplaced. After a diligent search, this has not been found." (Doc. 29).

Once the Errata Sheet was filed, MURPHY-SMITH had an opportunity re-depose Ryan Clegg with regard to this Errata Sheet but has not done so.

MURPHY-SMITH states that "Dr. Steele further testified in his deposition that he does not recall signing any particular documentation or paperwork or form." Although Dr. Steele did give that testimony, MURPHY-SMITH fails to include the follow up question,

6

which, in fact, had been asked to Dr. Steele at his deposition by MURPHY-SMITH'S counsel:

Q. All right. Would I best be – should I probably ask Mr. Clegg those questions? Would you think he would know?

A. He might.

(Steele Dep. 47:24 – 48:2, Nov. 12, 2013.)

Dr. Steele did not adamantly state that he did not sign the Named Driver Exclusion Election. He testified that he <u>did not recall</u> signing the form and then admitted that Mr. Clegg might be in a better position to know. Keep in mind that Dr. Steele never read any of the policy documents. Mr. Clegg affirmatively testified that Dr. Steele did, in fact, sign the Named Driver Exclusion Form.

As was stated in Mr. Dedrick's Affidavit, ". . . in order to exclude a named driver from coverage, the agent is required to secure a signed copy of the Named Driver Exclusion Election from the policyholder and maintain a copy in their files," but that PROGRESSIVE "does not require that the original signed Named Driver Exclusion Election, or copy thereof, be provided to PROGRESSIVE in order to exclude a driver from coverage." The fact that Mr. Clegg cannot locate the Named Driver Exclusion Election is of no import as he testified that Dr. Steel signed it. In summary, Florida law does not require that such a form be executed but, Ryan Clegg, Dr. Steele's agent, did secure such a written exclusion.

As to MURPHY-SMITH'S third argument, that argument is refuted by the terms of the policy itself. MURPHY-SMITH states, in her Response, "The word 'you' is defined in the Definitions section of the subject Personal Umbrella Policy (a copy of which was attached to Plaintiff's Complaint). Paragraph 20 states that "'You' and 'your' mean: a. A

7

person shown as a named insured on the Declarations Page; and b. The spouse of a named insured if residing in the same household."

The Personal Umbrella Policy provides, at Page 13, as follows:

JOINT AND INDIVIDUAL INTERESTS

If there is more than one named insured on this policy, any named insured may cancel or change this policy.  The action of one named insured will be binding on all persons provided coverage under this policy.

A copy of that provision is attached hereto as Exhibit "A" for the convenience of the Court. It is found at Doc. 1-2, Page 15 of 16, Page ID 36.  In brief, the policy does not require both Dr. Steele and Mrs. Steele to "ask" that Graham Steele be excluded as a driver under the policy.

Accordingly, for the reasons stated, PROGRESSIVE requests that this Court enter a final summary judgment in its favor.

DATED: February 14, 2014.

/s/ *Stuart J. Freeman*
Stuart J. Freeman, Esquire
Florida Bar No. 237493
Brasfield, Freeman, Goldis & Cash, P.A.
Post Office Box 12349
2553 First Avenue North
St. Petersburg, Florida 33733-2349
(727) 327-2258/(727) 328-1340 (FAX)
Email: sjfreeman@brasfieldlaw.net
Attorneys for Plaintiff, PROGRESSIVE AMERICAN INSURANCE COMPANY

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

      /s/ *Stuart J. Freeman*
Stuart J. Freeman, Esquire
Florida Bar No. 237493

Stephen H. Haskins, Esq.
Lucas, Green and  Magazine
8606 Government Drive
New Port Richey, FL 34694
Email: steve@lgmlawgroup.com
Counsel for Defendant,
Dorothy Mae Murphy-Smith

PAUL STEELE
160 WILLADEL CIRCLE
BELLEAIR, FL 33756

GRAHAM STEELE
160 WILLADEL CIRCLE
BELLEAIR, FL 33756

GRAHAM STEELE
POST OFFICE BOX 18182
CLEARWATER, FL 33762-1182

# EXHIBIT "A"

Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Entry of Final Summary Judgment

Dated February 14, 2014

## BANKRUPTCY OF AN INSURED PERSON

Bankruptcy or insolvency of an **insured person** or an **insured person's** estate will not:

1. relieve **us** of **our** obligations under this policy; or
2. operate to cause this policy to become primary in the event the **insured person** or **insured person's** estate is unable to satisfy the **retained limit** either because of insufficient **required underlying insurance** or insufficient personal assets.

## BANKRUPTCY OF AN UNDERLYING INSURER

In the event of bankruptcy, insolvency or receivership of any insurer providing **required underlying insurance**, the insurance afforded by this policy shall not replace such **required underlying insurance**, but shall apply as if the **required underlying insurance** was valid and collectible. If **you** learn of the bankruptcy, insolvency or receivership of any insurer providing **required underlying insurance**, **you** must notify **us** immediately.

## LEGAL ACTION AGAINST US

We may not be sued unless there is full compliance with all the terms of this policy.

We may not be sued for payment under Part I - Coverages until the obligation of an **insured person** to pay is finally determined either by judgment after trial against that person or by written agreement of the **insured person**, the claimant, and **us**. No one will have any right to make **us** a party to a lawsuit to determine the liability of an **insured person**.

## OUR RIGHTS TO RECOVER PAYMENT

If **we** make a payment under this policy, **we** are entitled to exercise the **insured person's** rights of recovery against any person liable for the **occurrence**. The **insured person** must do nothing after the **occurrence** to prejudice those rights. At **our** request, the **insured person** will bring suit or transfer those rights to **us** and help **us** enforce them.

## SEVERABILITY OF INSURANCE

This insurance applies separately to each **insured person**. However, this provision will not increase **our** limit of liability per **occurrence**.

## JOINT AND INDIVIDUAL INTERESTS

If there is more than one named insured on this policy, any named insured may cancel or change this policy. The action of one named insured will be binding on all persons provided coverage under this policy.

13